# Commonwealth v. Lavery, Appellant.

*Criminal law—Procuring women to enter bawdyhouse—Prostitution— Act of June 7, 1911, P. L. 698.*

A conviction of two men for a violation of the Act of June 7, 1911, P. L. 698, will be sustained where it appears that the defendants induced two girls under eighteen years of age to accompany them to a house of prostitution at eleven o'clock at night; that they had arranged

with the keeper of the house beforehand for rooms; that they invited a third man to accompany them; that they had food and intoxicating liquors in the rooms; that one of the defendants left shortly after midnight, but returned at four o'clock in the morning; that the men left early in the morning and the girls about eleven o'clock; and that both defendants were policemen.

Argued April 28, 1914.    Appeal, No. 110, April T., 1914, by defendants, from judgment of Q. S. Allegheny Co., Sept. Sessions, 1913, No. 289, on verdict of guilty in case of Commonwealth v. W. J. Lavery and Leo Kennelly.    Before RICE, P. J., HENDERSON, ORLADY, HEAD, PORTER, KEPHART and TREXLER, JJ.    Affirmed.

Indictment for an offense under the Act of June 7, 1911, P. L. 698.    Before REED, P. J., specially presiding. At the trial the jury returned a verdict of guilty.

On motion for arrest of judgment and for a new trial, REED, P. J., filed the following opinion:

It is unnecessary to enter upon a historical discussion of the derivation and meaning of the word "pandering," or the place that it has heretofore occupied in criminal jurisprudence.  Suffice it to say that in legal parlance it has practically the same meaning as "pimping," and although unknown by name designates an offense in contravention of the common law.  In substance it is aiding and abetting the maintenance of a bawdyhouse, which is an offense at common law.  In any event, there can be no valid objection to defining by statute what shall constitute the offense of pandering, and prescribing the punishment for it.  This is what the Act of June 7, 1911, P. L. 698, purports to do, and the subject of the enactment is so clearly expressed in its title that any attempt to elucidate this would be a vain and useless effort.  It follows that the objection to the constitutionality of the act on the ground of defective title cannot be sustained, and counsel for the defendants on the argument of this motion stated that this reason for arresting judgment would be abandoned.

The primary thing which this act of assembly aims to prevent is the procurement or inducement of female persons to become prostitutes, and it therefore condemns, inter alia, all means that may be resorted to for the purpose of encouraging, enticing or procuring a female person to become an inmate of a house of prostitution or any place where prostitution is practiced, encouraged or allowed, or to remain therein as an inmate, or to enter such place for the purpose of prostitution. It is clear that the act intends to proscribe all places where prostitution is practiced, encouraged or allowed and to make it an indictable offense to procure any female person to enter such place for the purpose of prostitution.

In the case at bar there is no question about the house to which the defendants took these two young girls being a place where prostitution was practiced, encouraged or allowed, and if the evidence tending to show that the defendants by some device or scheme procured these girls to enter this house for the purpose of prostitution was sufficient to warrant the submission of this question to the jury then there is no occasion for disturbing their verdict. That there was a plan or scheme by the defendants to take these girls to this house for a definite illegal purpose admits of no reasonable doubt. They knew the character of the house, and they arranged beforehand with the proprietress for admission without parley and without question, and thereby gave to their entrance the appearance of going into the house of some friend or acquaintance. They were officers of the law, conservators of peace and good order, and this was an assurance to these young girls that they might safely trust themselves to go with them without danger of any harm befalling them. The going to the house was also given the appearance of being for the purpose of a social entertainment of feasting and drinking, and it is not an unreasonable inference that these girls were induced to remain there and were despoiled by the use

of intoxicating liquors. The question, however, remains of whether the defendants enticed or procured them to enter this bawdyhouse for the purpose of prostitution, or merely to commit an act of fornication. It must be borne in mind that this is not the case of a man and woman entering a house of assignation together, remaining together and leaving together, or, in other words, a case where the only reasonable inference to be drawn from the facts is that the man's purpose in taking the woman to such place was to gratify his own lust. It is a case where two mature men took two young girls under eighteen years of age to a house of prostitution or assignation between eleven and twelve o'clock at night, and where one of the men immediately left and absented himself from the house until about four o'clock the next morning; also where one of them left the house some time before the other one; and where the two girls were finally left alone until about eleven o'clock the next day; also where the men just prior to going to this house with these girls had solicited another man to go along with them to a certain hotel, but who refused because of the manifest purpose for which he was solicited to join the party. It seems to me that it is not only a reasonable, but a plain inference from all the facts and circumstances surrounding this transaction that the purpose of the defendants in procuring these girls to enter this house of prostitution or assignation was to have them submit their bodies to an indiscriminate intercourse with men, as distinguished from sexual intercourse confined to one man. And, therefore, I am not disposed to be astute in finding a loophole through which they may escape the consequence of such criminal conduct.

The two young girls having taken their own lives shortly after this night's debauch, and the defendants having declined to offer any testimony explanatory of the transaction, it necessarily had to be left to inference from such facts and circumstances as the commonwealth

was able to produce. In my opinion they were sufficient to warrant the jury in finding that the defendants procured these two young girls to enter this house of assignation for the purpose of prostitution.

It is not necessary to a conviction under this indictment that there should have been some violence, threats, duress of the person or abuse of some position of confidence or authority whereby these females were constrained to enter this house of assignation, nor that they should have been compelled to enter it in fear and trembling. It is sufficient if they were enticed to enter it "by any device or scheme" whatsoever, and the evidence not only warranted the submission of this question to the jury, but also a finding by the jury that it was artfully and fraudulently procured. In Com. v. Cook, 53 Mass. 93, the female was not taken to a house of prostitution, and the only inference that could be drawn from the facts in that case is that she was taken for sexual intercourse with one man alone. There is no question about the law cited in support of the present motion; and while I recognize that there is some room for a difference of opinion on the facts, I am entirely satisfied that they were sufficient to take the case to the jury, and I am not satisfied that the verdict thereon is so palpably erroneous as to warrant my interference with it.

And now, February 14, 1914, the motion to arrest the judgment and for a new trial is refused, and judgment is now directed to be entered on the verdict.

*Error assigned* was the judgment of the court, and refusal of binding instructions for defendants.

*Rody P. Marshall*, with him *Frank C. McGirr*, for appellants.—The act should be strictly construed: Stewart v. Com., 10 Watts, 306; Warner v. Com., 1 Pa. 154; Com. v. Taggart, 3 Brewster, 340; Com. v. Giltinan, 64 Pa. 100; Com. v. Krickbaum, 199 Pa. 351; Com. v. Gouger, 21 Pa. Superior Ct. 217.

There was no taking for purpose of prostitution: Com. v. Cook, 53 Mass. 93; Osborn v. State, 52 Ind. 526; State v. Clark, 78 Iowa, 492; State v. Stoyell, 54 Maine, 24; Haygood v. State, 98 Alabama, 61; Carpenter v. People, 8 Barb. (N. Y.) 603; State v. Toombs, 79 Iowa, 741; State v. Ruhl, 8 Iowa, 447; People v. Demousset, 71 Cal. 611; State v. Brow, 64 N. H. 577; State v. Gibson, 111 Mo. 92; Krause v. Com., 93 Pa. 418; Com. v. Byers, 45 Pa. Superior Ct. 37; Com. v. Barrett, 28 Pa. Superior Ct. 112; Com. v. Ruddle, 142 Pa. 144; Com. v. Fleming, 130 Pa. 138.

*J. D. Douglas,* with him *R. H. Jackson,* district attorney, and *R. M. Gibson,* district attorney, for appellee, cited: State v. Ruhl, 8 Iowa, 447; U. S. v. Bitty, 208 U. S. 393; People v. Cummons, 56 Mich. 544.

PER CURIAM, May 14, 1914:

The assignments of error are overruled and the judgment is affirmed for the reasons given by the learned judge specially presiding in his opinion overruling the defendant's motion in arrest of judgment and for new trial, and the record is remitted to the court of quarter sessions of Allegheny county with direction that the judgment be fully carried into effect, and to that end it is ordered that the defendant forthwith appear in that court and that he be by that court committed to comply with such part of his sentence as had not been served and complied with at the time this appeal was made a supersedeas.